[Crim. No. 686.   Second Appellate District, Division One.—November 12, 1919.]

In the Matter of the Proceedings for the Disbarment of D. G. KLING, Attorney and Counselor at Law.

[1] ATTORNEY AT LAW—DISBARMENT PROCEEDINGS—FINDINGS.—Conceding that findings are not necessary in a proceeding for the disbarment of an attorney at law, nevertheless it is a practice not to be commended.

[2] ID.—ASSIGNMENT OF CLAIM—RIGHT OF DEBTOR TO DEAL WITH ASSIGNOR.—An assignment of a claim, though made for collection only, passes the legal title to the assignee, and after notice thereof the debtors deal with the assignor at their peril.

[3] ID.—COMPROMISE OF CLAIM BY ASSIGNOR—RIGHT OF ATTORNEY FOR ASSIGNEE TO REPUDIATE.—Where the assignor of a claim, after the assignee has recovered judgment thereon, compromises the same without the knowledge or consent of the assignee, the attorney for the latter can repudiate the act of the assignor in giving a receipt in full to the judgment debtor upon the payment by him of a sum less than the amount of the judgment, and thereafter proceed to collect the full amount of the judgment.

[4] ID.—UNWARRANTED DISBARMENT—MORAL TURPITUDE—ERRORS OF JUDGMENT.—In this proceeding for the disbarment of an attorney at law, the record fails to disclose any deception on the part of the attorney, or that he acted through corrupt motives or otherwise violated the provisions of section 282 of the Code of Civil Procedure. Moral turpitude cannot be predicated upon errors of judgment as to the law, or action had and taken in good faith by an attorney, openly and with notice to the adverse party under an honest assertion of legal right, where there is no deception or unfair advantage sought.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Reversed.

The facts are stated in the opinion of the court.

Winslow P. Hyatt for Appellant.

Percy V. Hammon and Paul Vallee for Respondent.

4. Necessity for bad faith or fraudulent motive to justify disbarment of attorney, note, 18 L. R. A. 401.

SHAW, J.—This is an appeal by D. G. Kling from a judgment of the superior court suspending him as an attorney and counselor at law from practicing his profession for a period of one year from March 10, 1919.

[1] The trial court made no findings of fact, and, conceding that findings in such cases are not essential to the validity of a judgment, nevertheless it is a practice not to be commended.

Want of such findings renders it necessary for us to state at length the facts which we deem established by the evidence. It appears therefrom that appellant and his sister, R. J. Kling, were the proprietors of a collection agency known as the Atlas Law and Adjustment Company; that among their clients was Dr. A. J. Berry, for whom, prior to these proceedings, they had acted in the collection and adjustment of some two thousand different claims and aggregating in amount upward of thirty thousand dollars; that prior to appellant's admission to the bar, which was in July, 1915, they, when necessary to bring suits upon claims intrusted to them for collection, employed an attorney for such purpose; that on August 15, 1914, Dr. Berry assigned to R. J. Kling, appellant's sister, and one of the proprietors of the Atlas Law and Adjustment Company, a claim against T. L. Norris and wife, the amount thereof being $173.65, under an agreement that where suit was brought upon claims assigned, the assignee should pay all cost and expense, including attorney's fees, incident to the bringing of such suit, and receive therefor as full compensation and reimbursement of expense made the sum of fifty per cent of the amount collected in such cases. The attorney to whom the matter was intrusted, in bringing the suit, included as defendants therein with Norris and his wife two other persons, to wit, Clyde Briggs and Augustin Huizar, against whom like claims had been assigned to the plaintiff, R. J. Kling, the total of which claims included in said action was $248.50. Due service was had upon all the defendants and judgment against them jointly taken for said sum. After this judgment was rendered a relative of the Norrises went to Dr. Berry and, as to the Norrises, induced him to accept $60 in full settlement of the judgment and in full payment thereof. This was on March 21, 1916, after appellant had been admitted to the bar, and at which time he,

as attorney, represented the Atlas Law and Adjustment Company, and also the plaintiff in said action, R. J. Kling. In an effort to collect the judgment he called upon the Norrises, when for the first time he learned of the payment of this $60 to Dr. Berry and the fact of the giving of receipt. Thereupon he called upon the doctor and told him that owing to the fact that the claim had been assigned and judgment obtained thereon by the assignee which had an interest in the judgment, his act in settling the claim was unwarranted, and that while the Norrises were entitled to recover the $60 from him, he would credit the judgment with the sum, which in effect would be equivalent to its return. Kling thereupon caused the judgment against the Norrises to be credited with the sum of $60, charged Dr. Berry with one-half thereof as commission, payment of which was retained out of collections made for and on behalf of Berry, and caused a transcript of the judgment rendered in the justice's court to be filed with the clerk of the superior court and an execution to be issued thereon and levied upon real estate owned by the Norrises. The amount for which the execution was so issued, however, was not the full amount of the judgment so rendered against the Norrises and their codefendants, Briggs and Huizar, in said action, but for the amount of the claim of Dr. Berry against the Norrises alone, to wit, $173.65, less such amounts as had been theretofore paid upon said claim against them. In other words, notwithstanding the fact that the judgment had been rendered against the Norrises for amounts due by their joint defendants, he only sought to recover from them the amount for which they alone were in fact liable. Of this action in thus levying the execution upon their property and advertising the same for sale, the Norrises had notice, and thereupon employed an attorney who unsuccessfully sought relief in the justice's court by motion to quash and set aside the execution, and the property was sold under execution. Thereafter the judgment debtors brought a suit in the superior court to quiet title, which action was tried and, after being held under advisement by the court for some three months, a judgment as prayed for was rendered in favor of the Norrises, from which, pending an appeal therefrom by the defendant in said action, to wit, R. J. Kling, the judgment creditor, a compromise was effected.

Conceding the action of the attorney in joining other defendants with the Norrises and thus taking judgment against them for more than the amount of the claim was irregular and without warrant of law, nevertheless, since it was had prior to appellant's admission to the bar and by an attorney other than himself, he should not be held responsible therefor. Moreover, since he did not, when he took charge of the matter, seek to collect by execution from the Norrises other than that part of the judgment for which they would have been liable had the suit been brought against them alone, they suffered no prejudice by reason thereof.

Furthermore, in enforcing the collection of the judgment by execution and sale of the property, he acted openly and without design to suppress from defendants in said action knowledge of the fact that he was about to sell their property under execution. According to his own uncontradicted testimony, he examined the law and consulted other attorneys as to the rights of his client under the circumstances, and concluded that as his client was the legal owner of the judgment, due to assignment thereof coupled with an interest in the account, he, acting for such client, was justified in enforcing payment of the judgment, in support of which he cites *Cobb* v. *Doggett*, 142 Cal. 142, [75 Pac. 785], and other authorities, which appear to support him in his contention. [2] The circumstances were such that, conceding the assignment was made for collection, the legal title thereto passed to the assignee, and after notice thereof the debtors dealt with Dr. Berry, the assignor, at their peril. (4 Cyc. 90; *McCloskey* v. *San Francisco*, 66 Cal. 104, [4 Pac. 1092].) That the Norrises had notice of the assignment conclusively appears from the fact that service of summons in the action brought against them upon the assigned claim was had upon them, and hence in adjusting the matter with Dr. Berry they acted with a stranger having no authority in the premises.

[3] That appellant, as attorney for the judgment creditor, could have repudiated the act of Dr. Berry in giving a receipt in full to the Norrises upon the payment to him of the $60, and thereafter proceeded to collect the full amount of the judgment, to our minds admits of no doubt. Respondent, however, insists that in accepting one-half of said sum so collected by Berry, his client with his knowledge

ratified the act, and hence his position was the same as though he, as attorney, had accepted said sum and given the receipt, by reason of which fact he was guilty of moral turpitude (Code Civ. Proc., sec. 287, subd. 5) in thereafter causing the levy of execution. Conceding that as a matter of law he was not entitled to enforce further payment, nevertheless, in the absence of deception or unfair advantage sought (and none is shown), his act was due to a mistake of judgment as to the law applicable to the case.

[4] The record, as we read it, fails to disclose any deception on the part of appellant, or that he acted through corrupt motives or otherwise violated the provisions of section 282 of the Code of Civil Procedure. The oath required by section 278 of the Code of Civil Procedure of an attorney is that he will "faithfully discharge the duties of an attorney and counselor at law to the best of his knowledge and ability." Moral turpitude cannot be predicated upon errors of judgment as to the law, or action had and taken in good faith by an attorney, openly and with notice to the adverse party under an honest assertion of legal right, where there is no deception practiced or unfair advantage sought.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.